UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

RUSSELL ALEXANDER
514 East Van Beck Avenue
Milwaukee, WI 53207-4460

   Plaintiff,

  v.            Case No: 17-CV-0812

ATI FORGED PRODUCTS, a div. of
ALLEGHENY TECHNOLOGIES INCORPORATED
1000 Six PPG Place
Pittsburgh, PA 15222

   Defendant.

## COMPLAINT

COMES NOW the Plaintiff, Russell Alexander, by his counsel, HEINS EMPLOYMENT LAW PRACTICE LLC, by Attorneys Janet L. Heins and Alan Freed, Jr., as and for a claim against the Defendant, alleges and shows to the court as follows:

### JURISDICTION AND VENUE

1. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case involves a federal question under the Americans with Disabilities Act Amendments Act of 2008 (ADAAA), 42 U.S.C. §12101 *et seq.,* and the Family & Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.

2. The unlawful employment practices giving rise to the Plaintiff's claims occurred within the Eastern District of Wisconsin, and venue is therefore proper in this District pursuant to 28 U.S.C § 1391(b), *inter alia.*

## THE PARTIES

3. Plaintiff, Russell Alexander, is an adult male resident of the State of Wisconsin, residing in Milwaukee County at 514 East Van Beck Avenue, Milwaukee, WI 53207-4460.

4. Defendant, ATI Forged Products, a division of Allegheny Technologies Incorporated (ATI) was, at all times material herein, a foreign corporation with a principal address of 1000 Six PPG Place, Pittsburg, PA 15222, doing substantial business in the State of Wisconsin in interstate commerce at 5481 South Packard Avenue, Cudahy, Wisconsin 53110.

## THE FACTS

5. Plaintiff began working for Defendant on January 8, 2007 as a welder at the Cudahy plant.

6. At all times material herein, Plaintiff had the most seniority in his position at Defendant, where he is still employed.

7. At all times material herein, Plaintiff performed his work duties in accordance with the reasonable expectations of the Defendant.

8. Defendant is a covered employer for purposes of the ADAAA and the FMLA.

9. Plaintiff suffers from the disability of anxiety dating back to 2012, of which Defendant has, at all times material herein, been aware. Some employees at Defendant regard Plaintiff as "retarded," or mentally disabled generally.

10. Just 3 days into John Vincent's employment with Defendant in 2012, after Plaintiff introduced himself to Vincent, Vincent told Plaintiff, "Go away. You're a fucking retard. I don't want to be your friend. We're never gonna be friends, so go away."

11. From the time of his hire in 2012, Mr. Vincent harassed and bullied Plaintiff at work, engaging in abusive behavior on a daily basis such as:

a. Verbally insulting Plaintiff;

b. Mocking Plaintiff as being "retarded";

c. Yelling obscenities to Plaintiff;

d. Flipping his middle finger to Plaintiff; and

e. Writing derogatory and discriminatory graffiti targeted toward Plaintiff.

12. Plaintiff reported Vincent's abusive and discriminatory treatment to various supervisors over the course of his employment, but the abuse continued unabated.

13. Plaintiff received an unsigned letter from Vincent on March 10, 2014, stating [sic]:

*To Retard*

*Your Dad use to tell everybody in 29 What a Retard his kid is now we know why! Your mom should have swallowed your retarded ass!*

*I feel bad for your kid having to grow up wit such a retarded fuck for a dad I hope it dont rub off!*

*You cant even hold your head up for 8 hrs with a hard hat on without cryn you useless pussy. Just remember you are the most useless retarded welder if you should even be called one this place has!!!!*

*and for you beating my ass tell me when and were.*

> *Retarded*
> *Useless*
> *Stupid*
> *Son of a bitch*

14. Plaintiff reported this letter to his supervisor Labbs, who took no action on it for more than three weeks. Instead, Labbs mocked Plaintiff and threatened to fire him.

15. On or about April 27, 2014, Plaintiff reported to Defendant that he found graffiti in the workplace referring to Plaintiff with a number of derogatory and discriminatory terms.

16. On or about May 8, 2014, Plaintiff was finally called into the office of Mr. Lockshire in Defendant's Human Resources to discuss the harassment against him.

3

17. On or about May 13, 2014, Plaintiff reported to Defendant that his work rig was parked in by someone.

18. On or about May 28, 2014, Plaintiff reported to defendant that he found a note stating only "winner" in his work area.

19. Upon information and belief, Vincent only received a verbal warning for harassing Plaintiff.

20. On May 30, 2014, Tony Slusar, Defendant's Die Room Department Head, admonished Plaintiff for making a phone call home, despite not enforcing the phone policy against other employees.

21. Slusar intrusively monitored Plaintiff.

22. In March 2015, Slusar was heard by several of Defendant's employees saying that no one in his area was moving.

23. In April 2015, Defendant's CEO, John Minich, held a public meeting for employees to ask questions.

24. Plaintiff stood up in the company meeting and asked pointed questions about management and safety concerns on the job.

25. Before Plaintiff could even leave the meeting when it was finished, someone asked Plaintiff who his boss was on third shift, leaving Plaintiff very concerned for his job.

26. In mid-June 2015, Defendant abruptly eliminated "fourth" shift, displacing both Plaintiff and Lee Wright, another welder.

27. Defendant reassigned Wright but refused to do so with Plaintiff, forcing Plaintiff to bid on the only open job (Sub Arc Welder 2nd Shift) on July 14, 2015 just to remain employed with Defendant. Slusar told Plaintiff he can do anything he wants (to reassign people), even though

Defendant was a union shop.

28. Sub Arc welding is very dangerous and invariably exposes the operator to dangerous fumes known to cause cancer. The job is very undesirable and difficult to fill by Defendant, and Plaintiff did not want to perform the job but felt he had no choice if he wanted to remain employed.

29. Defendant then transferred Plaintiff to first shift, allegedly for training, even though Plaintiff already knew the job of sub arc welding and had done it before.

30. Defendant inexplicably kept Plaintiff on first shift through August 2015, despite Plaintiff's requests to return to second shift.

31. The day after Plaintiff was finally placed on second shift in his new job, August 25, 2015, Defendant set him up to fail and then accused him of harming production. Defendant sent him back to first shift for more training.

32. On or about October 19, 2015, Defendant restored Plaintiff to second shift.

33. On or about October 21, 2015, Defendant issued Plaintiff a 1-week suspension for attendance back to April 23, 2015; this was reduced to a written warning two days later.

34. In November and December 2015, Plaintiff submitted FMLA certifications intermittent FMLA leave for anxiety, which Defendant approved.

35. Defendant had not previously offered FMLA leave to Plaintiff, despite its knowledge of his disability and attendance issues.

36. On or about December 10, 2015, Plaintiff met with HR to discuss attendance concerns, in which Plaintiff complained about discrimination and harassment as well as FMLA violations. Plaintiff was suffering from anxiety at that time due to a divorce.

37. On or about December 15, 2015, Plaintiff had an anxiety attack at work and left work before the end of shift, telling the medical guard shack that he was leaving work for medical

reasons and using FMLA.

38. On January 19, 2016, Plaintiff filed an employment discrimination complaint against Defendant with the Wisconsin Equal Rights Division, designated as ERD Case No. CR201600463 and cross-filed with the U.S. Equal Employment Opportunity Commission ("EEOC") as EEOC Case No. 443-2016-00426C.

39. The EEOC issued Plaintiff a Notice of Right to Sue for this case on March 10, 2017.

40. Defendant continues to discriminate and retaliate against Plaintiff and deny him FMLA leave.

41. Plaintiff has exhausted all of his administrative remedies and has satisfied all conditions precedent to bringing this action.

## FIRST CLAIM FOR RELIEF — ADAAA DISCRIMINATION

42. Plaintiff realleges and incorporates paragraphs 1-41 of this complaint by reference.

43. Defendant discriminated against Plaintiff based on disability in the terms and conditions of his employment, in reckless disregard of his federally protected rights under the ADAAA, 42 U.S.C. §12101 *et seq.*

44. As a result of Defendant's intentional discrimination, Plaintiff has suffered damages in the form of lost wages, lost employment benefits, loss of reputation among his co-workers, physical pain and suffering, and emotional distress. These damages continue into the present and will continue into the foreseeable future.

## SECOND CLAIM FOR RELIEF — ADAAA RETALIATION

45. Plaintiff realleges and incorporates paragraphs 1-44 of this complaint by reference.

46. Defendant intentionally retaliated against Plaintiff in the terms and conditions of his employment for opposing disability discrimination in the workplace in reckless disregard of his federally protected rights under the ADAAA, 42 U.S.C. §12203 *et seq.*

47. As a result of Defendant's intentional retaliation, Plaintiff has suffered damages in the form of lost wages, lost employment benefits, loss of reputation among his co-workers, physical pain and suffering, and emotional distress. These damages continue into the present and will continue into the foreseeable future.

### THIRD CLAIM FOR RELIEF – FMLA INTERFERENCE

48. Plaintiff realleges and incorporates paragraphs 1-47 of this complaint by reference.

49. Defendant unlawfully interfered with Plaintiff's use of FMLA leave in reckless disregard of his federally protected rights under the Family and Medical Leave Act of 1993, 29 U.S.C. §825 *et seq.*

50. As a result of Defendant's intentional interference, Plaintiff has suffered damages in the form of loss of wages and other employment benefits, liquidated damages, and other damages that he will establish at trial.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Order Defendant to make Plaintiff whole by providing appropriate back pay, front pay and/or reinstatement, liquidated damages, pre-judgment and post-judgment interest, and reimbursement for other benefits and expenses in an amount to be shown at trial;

7

2. Grant to Plaintiff his attorney fees, costs and disbursements as provided by 42 U.S.C. §12117, 29 U.S.C. § 2617, and all other applicable statutes and provisions; and

3. Grant to Plaintiff whatever other relief this Court deems just and equitable.

Dated this 8th day of June, 2017.

                                        HEINS EMPLOYMENT LAW PRACTICE LLC
                                        Counsel for the Plaintiff

                                        *s/ Janet L. Heins*
                                        Janet L. Heins, State Bar No. 1000677

HEINS EMPLOYMENT LAW PRACTICE LLC
1001 West Glen Oaks Lane, Suite 101
Mequon, WI  53092
(262) 241-8444 voice
(262) 241-8455 facsimile
e-mail: jheins@heinslawoffice.com